181 So. 695
**LOUISVILLE & N. R. CO. et al. v. DAVIS.**

6 Div. 140.

Supreme Court of Alabama.

Feb. 17, 1938.

Rehearing Denied May 26, 1938.

Chas. H. Eyster, of Decatur, Huey & Welch, of Bessemer, and White E. Gibson, of Birmingham, for appellants.

F. F. Windham, of Tuscaloosa, Ewing & Perrine and Sam C. Pointer, all of Birmingham, and Lipscomb & Lipscomb, of Bessemer, for appellee.

GARDNER, Justice.

This action is under our homicide statute (section 5696, Code 1923), and no question presented on former appeal is of controlling interest here. Davis v. Louisville & Nashville R. R. Co., 232 Ala. 382, 168 So. 449.

Under plaintiff's theory of the case her intestate was struck and killed by defendant's train at a public street crossing in the city of Bessemer between 11:30 and 12 o'clock at night.

Defendants insist it was not known decedent was struck by the train, but, if so, it was not at the crossing but some dis-

tance north of the crossing, and offered much proof to substantiate this theory.

■ The cause for plaintiff was tried upon a single count (count 1) seeking recovery for simple negligence, which count was not subject to the demurrer interposed thereto under Southern Ry. Co. v. Crenshaw, 136 Ala. 573, 34 So. 913, 916.

Discussing counts 1 and 2 in that case the court observed that it was "not necessary for the complaint to negative that she was at fault in the manner in which she conducted herself while on the track in the highway, since such fault, if it existed, was defensive matter."

■ The evidence was undisputed that for some distance approaching this crossing the track was down grade to such an extent as to permit this freight train to coast as it approached. Perhaps refused charge 6 was faulty in assuming, in view of this proof, that under such conditions the "usual noise of a freight train running at twelve or fifteen miles per hour" was made, there being no evidence upon that subject. But this aside, we think it clear the substance of this charge was fully covered by charges 5 and 11, given for defendant, and that in no event could its refusal be held reversible error.

The principle of law embraced in refused charge 9 was covered in charge 14, given for defendant; and needs no further comment.

Defendants in brief lay much stress upon refused charges 20 and 35 as having application to the proper construction of section 9955, Code 1923, a question touched upon but not directly decided in Louisville & Nashville R. R. Co. v. Lee, 216 Ala. 196, 112 So. 755, and Davis v. Louisville & Nashville Railroad Co., supra. But there is no occasion on this appeal to enter into a discussion of that question for the simple reason that the court gave, at defendants' request, charges 22 and 37 which are identical in substance, if not in exact language of refused charges 20 and 35.

But defendants insist the question is here to be determined for the reason the judgment is also against the engineer and fireman, and the matter of their liability is affected by the statute. But there is proof tending to show there was no compliance with the statute, and that these defendants are affected thereby without regard to the matter of the burden of proof. A like observation was made in Louisville & Nashville R. R. Co. v. Lee, supra.

■ However, we have no disinclination to an expression of an opinion upon the proper construction of the statute in this regard. The railroad company could only operate its train by and through the agency of its servants or agents. The statute is to be given a reasonable and commonsense construction, and to effectuate the legislative intent. And the statute is to be considered also in connection with sections 9952 and 9953, Code 1923, relative to the agents or servants of the railroad company "having control of the running of a locomotive on any railroad." Section 9952, Code. The Legislature knew of course that the agents or servants operating the train and upon whose negligence a plaintiff relies for recovery may properly be joined as party defendants in a suit against the railroad company. It would be unreasonable, if not absurd, to assume that the lawmakers intended that the burden of proof upon the stated circumstances should rest upon the company, and yet exempt from the operation of the rule the same agents upon whose negligence in the operation of the train liability is sought to be fastened upon the company. This was, to our minds, clearly not the legislative intent, and we therefore conclude that the statute is to be properly construed to the contrary, and as indicated in Louisville & Nashville R. R. Co. v. Lee, supra, and Davis v. Louisville & Nashville R. R. Co., supra.

■ In Manistee Mill Co. v. Hobdy, 165 Ala. 411, 51 So. 871, 138 Am.St.Rep. 73, the court's condemnation of the use of the word "even" in the charge there considered is equally applicable to defendants' charge 21, and justifies its refusal.

In the argument for the affirmative charge for defendants stress is laid upon Carlisle v. Alabama G. S. Ry., 166 Ala. 591, 52 So. 341, but we find the facts of the two cases widely variant.

Like observation is applicable to the cases of Empire Coal Co. v. Martin, 190 Ala. 169, 67 So. 435; Louisville & Nashville R. R. Co. v. Moran, 190 Ala. 108, 66 So. 799; Louisville & Nashville R. R. Co. v. Turner, 192 Ala. 392, 68 So. 277; Louisville & Nashville R. R. Co. v. Jones, 191 Ala. 484, 67 So. 691; McKinnon v. Polk, 219 Ala. 167, 121 So. 539, also cited by defendants.

■ It is clear enough in the instant case the jury were authorized to find

plaintiff's intestate was struck by the train, which passed the crossing between 11:30 and 12 o'clock at night. His mangled body was found lying between the rails some 18 or 27 feet south of the center of the crossing; but plaintiff offered proof sustaining the view that he was struck while on the crossing, and his body dragged this distance.

While defendants' proof tended to show the collision with decedent, if struck by the train, was some 100 feet north of the crossing, yet this but presented a disputed issue of fact for the jury's determination.

█ Plaintiff also offered proof of a negative character to the effect the whistle was not blown nor the bell rung for this crossing as required by the statute. Section 9952, Code 1923. True, both the defendant's engineer and fireman of the train on that night testify to a compliance with the statute in these respects, but this too presented a conflict of proof for the jury. There was no eyewitness to the accident. The engineer and fireman both testify they were looking ahead. The track was straight, and nothing to obstruct the view for a distance of a quarter to three-quarters of a mile. The headlights were in order and a man could be seen some 600 feet down the track, and a distance of 50 feet on each side. They saw no one at or near the crossing, and knew nothing of the accident until the next day, when it was so reported, and when under the brakes of the tender of the engine was found a strip of overall corresponding to those on the body of plaintiff's intestate, though the front of the engine bore no indication of having contacted a human body.

The testimony of the engineer, however, as to his inspection at a stop after the passing of this crossing, indicated his suspicion that some object had been struck by the engine at this point.

█ Many details of proof are here omitted as unnecessary to relate. Suffice it to say the evidence, above outlined, was enough for submission of the case to the jury upon the doctrine of simple initial negligence. Saxon v. Central of Georgia Ry. Co., 192 Ala. 434, 68 So. 313.

█ Of course, negligence in failure to observe these statutory duties to ring the bell and blow the whistle at the crossing must be actionable, and must have proximately contributed to the injury complained of, for these statutory duties are no more binding than the duties imposed by the common law upon the public to stop, look, and listen before crossing the track at such time and place with reference to the particular situation in each case as will enable the traveler to accomplish the purpose the law has in view in its imposition upon him. Saxon v. Central of Georgia Ry. Co., supra.

█ Defendants assume in their argument that plaintiff's intestate did not observe this duty, and that as a matter of law he was guilty of contributory negligence.

True, it has been held that, following the law of self-preservation, in the absence of any evidence or circumstance to the contrary, there is a presumption that this duty was observed. Baltimore & Potomac R. R. Co. v. Landrigan, 191 U.S. 461, 24 S.Ct. 137, 48 L.Ed. 262. This presumption, however, in each case must be considered in connection with all the facts and circumstances, as, for instance, in the present case a straight track for some distance, and the headlight burning and the noise of the train, all of which are to be weighed by the jury in determining the question of contributory negligence. See, also, Bromley v. Birmingham Mineral R. R. Co., 95 Ala. 397, 403, 11 So. 341, and Louisville & Nashville R. R. Co. v. Crawford, 89 Ala. 240, 245, 8 So. 243. It cannot be said, therefore, that under all the facts and circumstances plaintiff's intestate was guilty of contributory negligence as a matter of law.

█ And we are persuaded also the evidence was sufficient for submission to the jury of the question of subsequent negligence, embraced in a count for simple negligence. Saxon v. Central of Georgia Ry. Co., supra.

The jury could infer that the engineer and fireman did see plaintiff's intestate upon the track or perilously near thereto, though they testified to the contrary, as they each insist they were looking straight ahead, and that a human being could have been seen a distance of more than 600 feet and 50 feet on each side, the track being straight and unobstructed for a much greater distance. Central of Georgia R. Co. v. Lee, 227 Ala. 661, 151 So. 840; Louisville & Nashville R. R. Co. v. Calvert, 172 Ala. 597, 55 So. 812. The train was coasting down grade until within a distance of about 200 feet of the crossing. There was no slackening of the speed, estimated from 12 to 20

miles per hour, and no application of the brakes; and the jury could infer from the evidence the whistle was not blown. From the proof the train could have been stopped within a distance of from 75 to 250 feet, dependent upon the speed. But we need pursue the discussion no further. All the facts and circumstances considered, we think a case for subsequent negligence was made out for the jury's consideration, under the following, among other of our authorities: Saxon v. Central of Georgia Ry. Co., supra; Duncan v. St. Louis & S. F. R. R. Co., 152 Ala. 118, 44 So. 418; Louisville & Nashville R. R. Co. v. Calvert, 172 Ala. 597, 55 So. 812; Central of Georgia Ry. Co. v. Lee, 227 Ala. 661, 151 So. 840; Central of Georgia R. Co. v. Ellison, 199 Ala. 571, 75 So. 159.

We find no reversible error in admitting proof as to the frequent use of this crossing. Alabama G. S. R. Co. v. Molette, 207 Ala. 624, 93 So. 644.

And we reach a like conclusion as to the action of the court in permitting inquiry by counsel to the jurors as to their qualifications under section 8662, Code 1923. The extent of such an examination is largely a matter resting in the sound discretion of the trial court. Rose v. Magro, 220 Ala. 120, 124 So. 296. Counsel asked as to the acquaintance of any of the jurors with either of the individual defendants, and then stated he would like to make the same inquiry as to certain named parties who were not parties to the cause. What connection, if any, these persons had with this case the record does not inform us. The trial judge said: "We are beginning to branch out considerably: I guess no harm in it." And we can only add that so far as this record indicates there was in fact "no harm" done.

The manner in which plaintiff's intestate was killed was a matter dependent much upon circumstantial proof, and we find no error to reverse in permitting plaintiff to offer evidence (assignments 45, 50, and 51) tending to show that he was not under the influence of intoxicants.

Assignments of error 47, 68, 69, 70, and 92 so clearly present no error to reverse as to call for no separate treatment here. And assignment 21 is answered by our conclusion that the matter of subsequent negligence was properly submitted to the jury.

True that in order for the jury to return a verdict against the defendant railroad company there must also be a finding against the defendant agent, whose negligence formed the basis of liability. But here two agents of the railroad company were parties defendant, the engineer and the fireman, and, manifestly, the jury could find one of them guilty of negligence and the other not guilty. In view of this situation, defendant can take nothing by the exception to the oral charge forming the basis of assignment 108.

One of the grounds for the motion for new trial was the excessiveness of the verdict, and this is the ground upon which defendants lay the greater stress.

The purpose of our homicide statute, as often declared, was not to compensate any one, but to mete civil punishment to the wrongdoer and thereby prevent homicides (Kennedy v. Davis, 171 Ala. 609, 55 So. 104, Ann.Cas.1913B, 225), and the recoverable damages are punitive only.

The trial judge evidently entertained grave doubts as to the justice of the verdict, and his action in setting aside the verdict for plaintiff upon the first trial was the only question here presented for review on former appeal.

As in Central of Georgia Ry. Co. v. Lee, supra, we too may entertain some such doubt, but as there observed, we are dealing with the cumulative presumptions of like verdicts of two juries.

The learned trial judge saw and heard the witnesses on the two trials of this case, and in passing upon the motion for a new trial the language of the opinion accompanying the order of denial of the motion can only be interpreted to the effect that in his opinion the verdict is excessive. In the judgment on the motion, it is said: "The court is of the opinion the damages being punitive, and measurable by the degree or extent of culpability of defendants, and the manner of deceased's death being largely speculative, it is difficult for the court to understand how the jury could fix such a high degree of culpability as indicated by the amount of damages assessed, however, we leave for the higher court any question or consideration of reduction of damages."

It is very evident the trial court had in mind that the accident must, at least in large part, have been due to the carelessness or heedlessness of plaintiff's intestate as he walked, in view of the undisputed fact of an unobstructed view of an approaching train for so great a distance. We can only

interpret the opinion of the trial judge as an invitation to this court for a reduction of the damages in view of all the facts and circumstances, a suggestion which of course, is not binding, but concerning which we should give careful consideration.

■■ As stated by the trial judge, the amount of damages must depend upon the degree of culpability of the respective parties. Southern Ry. Co. v. Sherrill, 232 Ala. 184, 167 So. 731. In view of all of the foregoing considerations, and after a careful study of the record, we are persuaded the suggestion of the trial court should be heeded, and that the verdict should accordingly be here reduced.

Therefore, under the authority of section 6150, Code 1923, the verdict is hereby reduced to the sum of $6,000, and if plaintiff remits all amounts in excess of said sum by filing a remittitur with the clerk of this court within thirty days, then the judgment of the circuit court will be affirmed: otherwise the judgment will be reversed and the cause remanded.

Affirmed conditionally.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.